TOM CLINE V. THE STATE.

*No. 666.    Decided April 20.*

1. **Bill of Exceptions to Excluded Evidence.**—A bill of exceptions to the exclusion of testimony must disclose the relevancy and materiality of the proposed testimony, in order to entitle it to consideration on appeal.

2. **Conspiracy—Evidence of Acts and Declarations of Coconspirators.**—On a trial for murder, where a conspiracy between defendant and others to commit the crime has been established, the acts and declarations of each of the coconspirators, pending the conspiracy, and up to and including the consummation of the same, are pertinent and admissible evidence against the coconspirator on trial.

APPEAL from the District Court of Gonzales. Tried below before Hon. T. H. SPOONER.

This appeal is from a conviction for murder of the second degree, the punishment assessed being a term of five years' imprisonment in the penitentiary.

This is a companion case to Dan Cline v. The State, 33 Texas Criminal Reports, 482. The facts will be found fully reported in that case, in connection with the facts stated in the opinion below.

*George Burgess,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant in this case was tried under an indictment charging him with murder. The jury trying the case found him guilty of murder in the second degree, and assessed his punishment at five years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal.

The appellant contends, that the court erred in refusing to allow the defendant, in the cross-examination of the two State witnesses Lee and William Monroe, to ask them about the occurrences on the night be-

fore the killing, as to the getting of guns by the Cunninghams and Monroes, and what was said and done by said Cunninghams and Monroes on the road home.   It is sufficient to say, that the bill of exceptions in this case does not indicate what the defendant proposed to prove by said witnesses on the cross-examination; or to show that the same was material to the rights of the defendant in this case.   The bill of exceptions to the exclusion of testimony must disclose the relevancy and materiality of the proposed testimony in order to receive the attention of this court.   Buchanan v. The State, 24 Texas Crim. App., 195.

Appellant insists, that the testimony of Tamer Monroe, a witness for the State, was improperly admitted, which was as follows, to wit: "I was at Abe Cline's house the evening before the killing that night. Marshall Cline came soon after I went there.   He said he had been to Flatonia.   He had a Winchester, and I saw him load the gun with cartridges.   When he came in he laid the cartridges on the water shelf.   He took the cartridges on the water shelf, and put them in the gun, and walked out, and shot it, and said, 'It shoots to the mark.'   Marshall asked where Tom was with the other gun; that they would need it tonight.   Abe Cline, the father of the defendant, was present, and said, 'Mrs. Monroe, if the boys won't tell you, I will.   My boys and your boys are in a row, not your boy, but your folks.'   At that time Marshall said,  'Yes; Work is putting Lee up to it, and uncle Mart ought to talk to Lee.'   I then said,  'O, Work ain't going to do anything.   He is just talking around.'   Then Marshal said,  'Well, he mustn't fool with him;' and said, 'If they come out to-night, we will get them.' Then his father, Abe Cline, said,  'Yes, I expect the sheriff will be out after you to-night.'   Marshall said:  'Well, if he comes out to get me, he won't get me for nothing.   The other boys will get the worst of it.' "

The theory of the State in this case was, that the killing of the deceased occurred in pursuance of a conspiracy formed between Marshall, Dan and Tom Cline, all of whom were charged in the same indictment with murder of Dave Cunningham.   In support of this theory, the State showed, that the night previous to the night of the killing, Tom Cline, the defendant in this case, came to Dave Cunningham, under an arbor in the neighborhood where they were holding church, and asked him to come out of the arbor, as he wanted to see him; that he went out, and defendant told him he wanted his coat back; that he said to him, "You can have it, if you will pay me the damage he had done to his coat," and that he said he would not pay anything; that he then told defendant he could not get his coat, as he had nearly worn the coat he traded him out.   Defendant said, "By God, if you will leave the arbor, he would have his coat."   Abe and Marshall Cline, brothers of the defendant, were there.   It seems that after this the parties separated, and Cunningham sent home after a gun, as Marshall Cline had a Winchester at the church. After church, the Cunninghams and Monroes left together for home, and passed Cline's house on the way.   As they passed Marshall Cline was at the fence

with a Winchester, and Tom was with him with a pistol.  On the next day it is shown that Marshall Cline went to Flatonia, carrying his Winchester.  On his way back, he met one of the witnesses, Mc-Gee, and told him:  "You seem to be a good fellow, and don't you be with the boys [Cunninghams] to-night, for if they come out we are going to commence shooting, and shoot as long as one of them is in sight."  On the night of the shooting, and before it came off, another witness, Dick Kindred, states that he was at the arbor, keeping a lemonade stand; that the Cline boys were there.  He saw them several times; saw Marshall, Dan, Tom, and Abe Cline there talking together. Marshall and Tom got on the same horse, and rode off in a fast gallop. Marshall had a Winchester; and in a few minutes they came back, riding in a fast gallop, and they called Dan Cline off, and said something to him, and left on foot, going through the woods.  In a few minutes thereafter the shooting occurred.  It further appears, that on the night in which the shooting occurred, Dave Cunningham and his brother, the deceased, started together in a buggy, drawn by two horses, from their home, to a school exhibition in the neighborhood, at Wesley Chapel.  Their route was by the arbor where the difficulty had occurred the night before.  Lee and Will Monroe started with them on horseback.  They passed the arbor and the lemonade stand of Kindred, as before mentioned, and had gone some 150 yards beyond it.  They had two guns with them in the buggy.  It seems that on the road, and about a half-mile before they reached the said arbor, that Marshall and Tom Cline, riding the same horse, passed in a gallop.  After passing them some distance, they turned and passed them again, riding fast, and going on ahead of them, in the direction of the arbor.  As they passed, they fired a gun off.  When, as before stated, Dave Cunningham and his deceased brother had passed the arbor and lemonade stand some 100 or 150 yards, the evidence shows that Marshall, Dan, and Tom Cline came out of the bushes from the left of the road.  Tom went to the right of the road, in front of the buggy; Dan remained on the left of the road; and Marshall went in front, and got hold of the horse's bridle, and raised his Winchester. The evidence shows, that at this juncture Marshall Cline and Dave Cunningham both shot, the ball from Marshall's gun taking effect in Dave Cunningham's chin.  This was the last shot, so far as the evidence shows, fired by the Cunninghams.  About fifteen or twenty shots were fired in all.  Marshall, Tom, and Dan Cline all engaged in the shooting, according to the testimony of one of the witnesses. Spencer Cunningham was shot just below the breast, and once in the thigh, and he died from the wounds that night.

To our minds, the evidence of the occurrences on the night before the shooting and on the night of the shooting establi_nes a conspiracy between the brothers, Dan, Marshall, and Tom Cline.  The evidence of this conspiracy renders pertinent the acts and declarations of each of the coconspirators pending said conspiracy, and up to and includ-

ing the consummation of the object of the same; and this, in our opinion, rendered admissible the evidence of the witness Tamer Monroe as to what Marshall Cline said to her on the evening before the fatal shooting. Although no names were called, yet there could be no misunderstanding as to whom Marshall Cline alluded in his said conversation.

We do not think the charge of the court subject to the criticisms made by the appellant in this case. In our view, the same was a full and fair exposition of the law of the case, and the facts were sufficient to authorize the verdict.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.