### ELBERT EADS v. THE STATE.

#### No. 3478.   Decided March 24, 1915.

Rehearing denied May 19, 1915.

**1.—Murder—Charge of Court—Actual and Apparent Danger.**

Where, upon trial of murder, the evidence showed that from the language and acts of deceased viewed in the light of the threats that had been communicated to defendant, the latter thought his life in danger, etc., and the court charged the jury that if deceased made an attack on the defendant for the purpose of taking life or inflicting serious bodily injury, or if from acts or words of the deceased at the time, it then reasonably appeared to the defendant that he was in danger, etc., even though there was no actual danger in fact, but only apparent danger, from which it appeared to the defendant, etc., that his life was in danger, etc., to acquit the defendant, such charge did not limit his right of self-defense to an actual attack, and there was no error on that ground.   Davidson, Judge, dissenting.

**2.—Same—Charge of Court—Threats.**

Where, upon trial of murder, the defendant claimed threats by the deceased, which the State contested, and the court charged the jury that if they found from the evidence that the deceased made threats against the life of the defendant and that such threats had been communicated to him, etc., or if they found that report of threats had been communicated to the defendant, whether they were actually made or not, etc., to acquit the defendant, such charge did not require the jury that the deceased actually made the threats. Davidson, Judge, dissenting.

**3.—Same—Charge of Court—No Conflict.**

Where, upon trial of murder, the court in submitting his charge on self-defense on the issue of threats did not require the jury to find that deceased actually made the threats, when the charge is carefully read, and also submitted a special charge requested by the defense in which he emphasized the defendant's right to act upon threats as though they had been actually made, although they had in fact not been made, the contention that there was a conflict in the court's charge is untenable.

**4.—Same—Implied Malice—Charge of Court.**

Where defendant had been tried under the old law of murder and acquitted of express malice or murder in the first degree, but found guilty of implied malice, or murder in the second degree, and the judgment was set aside, he could again be tried for murder upon implied malice.

**5.—Same—Statutes Construed—Legislative Intent.**

The Legislature has never repealed the law defining a killing upon implied malice as murder, but merely consolidated and defined as one offense murder upon express and upon implied malice.

**6.—Same—Evidence—General Reputation.**

Where, upon trial of murder, different witnesses were permitted to testify that the reputation of defendant's wife for virtue and chastity was good, there was no error, inasmuch as defendant testified to an act of carnal intercourse between deceased and defendant's wife, the defendant placing the transaction at such time and place that no other witness could have seen the same, and not calling his wife as a witness.   Following Cameron v. State, 69 Texas Crim. Rep., 439.

**7.—Same—Evidence—Circumstances.**

Where, upon trial of murder, defendant had not yet testified that he had killed the deceased, and the State's case at that juncture depended upon cir-

cumstantial evidence, there was no error in admitting testimony that the sheriff, after the arrest of the defendant made search for arms and found a pistol and some cartridges in the loft of defendant's premises.

### 8.—Same—Evidence—Undisclosed Motive of Deceased.

Upon trial of murder, there was no error in admitting testimony that a certain store building was used for lodge purposes and that a lodge met there on the night of the killing, and deceased was on his way to the lodge; the defendant's objection simply being that such testimony was irrelevant and prejudicial to the defendant, but none of the jurors belonging to any lodge, and there being no objection as to the undisclosed motive of the deceased. Following Carter v. State, 37 Texas Crim. Rep., 403, and other cases. Davidson, Judge, dissenting.

### 9.—Same—Evidence—Circumstances—Motive.

Where defendant, upon trial of murder, testified to certain hostile acts of deceased upon which he relied as a justification, testimony by the State that deceased was on his way to a meeting of the lodge could not, and would not, in the least, tend to explain any of said hostile acts, and in the absence of an objection that defendant was not aware that deceased traveled this road on his way to the lodge and such facts were unknown to him, there was no reversible error. Davidson, Judge, dissenting.

### 10.—Same—Actual Attack—Apparent Danger.

Where the court's charge did not confine the danger upon actual attack, but upon reasonable appearances of danger, as it appeared to the defendant, a criticism that defendant's right of self-defense was made to depend upon actual attack is not well taken. Davidson, Judge, dissenting.

### 11.—Same—Threats—Charge of Court.

Where, upon trial of murder, the court did not require the jury that the alleged threats by the deceased against the defendant had been actually made, but instructed them if threats had been communicated to the defendant, whether actually made or not, he would have the right to shoot and kill, if deceased at the time, by his acts or words manifested an intention to kill defendant or do him some serious bodily injury, there was no error; nor was this charge in any conflict with the requested charge submitted on the same subject. Following Buckner v. State, 55 Texas Crim. Rep., 511, and other cases. Davidson, Judge, dissenting.

### 12.—Same—Evidence—Motive of Deceased.

Upon trial of murder, there was no error in admitting testimony that deceased was on the way to attend a lodge at the time of the killing, there being no objection on the ground that the motive of the deceased was unknown to the defendant. Following McGrath v. State, 35 Texas Crim. Rep., 413, and other cases. Davidson, Judge, dissenting.

### 13.—Same—Rule Stated.

Where the objection is to the admissibility of testimony, the very ground of objection should be stated, and grounds not stated can not be considered on appeal. Following McGlasson v. State, 38 Texas Crim. Rep., 351, and other cases.

### 14.—Same—Stating Facts in Opinion.

Where, in the motion for rehearing, exception was taken to the court's statement in the opinion as to the State's theory that defendant took a certain road home, etc., and hid himself in a depression, etc., and such statement was borne out by the facts, there was no error; besides, this question had no bearing on the questions raised on appeal.

Appeal from the District Court of Collingsworth.   Tried below before the Hon. J. A. Nabers.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*R. E. Taylor* and *G. H. Culp* and *Clinton Small* and *J. L. Lackey,* for appellant.—On question of the court's charge on threats: Tate v. State, 55 Texas Crim. Rep., 397; Taylor v. State, 116 S. W. Rep., 606; Buckner v. State, 55 Texas Crim. Rep., 511, 117 S. W. Rep., 802.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—This is the third appeal in this case, the opinions on the former appeals being reported in 66 Texas Crim. Rep., 548, 147 S. W. Rep., 592, and 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145. On this trial appellant was again found guilty of murder, and his punishment assessed at eight years confinement in the penitentiary.

The record discloses that appellant killed his father-in-law on the road from the latter's home to Aberdeen, late one evening.  Deceased and his wife had separated, but at the time of the homicide had again begun to live together.  During the time of the separation the record discloses ill-will existed between appellant and deceased, and both had made threatening remarks.  No one witnessed the fatal meeting other than appellant.  He testifies when he met his father-in-law in the road, deceased said, "I have been laying for you a long time; why didn't you sign that lie bill."  He replied, "Old man, I have stayed at home and tried to shun you to keep from having trouble with you, and you had better go on home and leave my business alone."  That deceased then said, "I will attend to your business for you," and as he said this threw himself forward in his saddle and reached toward his hip pocket. That from the language used, and deceased's action, viewed in the light of the threats that had been communicated to him, he thought his life was in danger, and he drew his pistol and shot.

In one exception to the court's charge appellant contends that the court limited his right to defend against an actual attack.  If this was the proper construction to give the charge, there might be some merit in the contention, but this paragraph reads: "Now if you shall believe from the evidence that defendant, Elbert Eads, killed A. J. Hopkins, yet if you believe the deceased made an attack on the defendant then indicating a purpose to take the life of the defendant, or of doing him some serious bodily injury; or if from the acts or words of the deceased at the time it then reasonably appeared to the defendant that he was in danger of losing his life, or of suffering serious bodily injury at the hands of the deceased, even though there was no actual danger in fact, but only apparent danger, and that such danger reasonably appeared to the defendant to be imminent and pressing, viewing the matter from the standpoint of the defendant alone, and in the light of the

circumstances as they then reasonably appeared to the defendant, and under such circumstances defendant shot and killed A. J. Hopkins, if you so find, in either event, you should acquit the defendant."

Appellant also contends that in submitting the issue of threats the court required the jury to find that deceased made the threats. Again we would say if that paragraph was subject to such criticism, there would be merit in the contention, as the State contested that deceased had made any threats. But the paragraph reads: "Now if you shall find that the deceased made threats against the life of the defendant, and that such threats had been communicated to the defendant before the difficulty in which deceased lost his life, *or if you find that report of threats had been communicated to the defendant whether they were actually made or not,* and you find at the time of the homicide, if any, the deceased did some act which then reasonably indicated to the defendant that he was then in imminent and pressing danger at the hands of the deceased of losing his life or of suffering serious bodily injury, and *that deceased was then about to put such threats into execution,* and acting upon such danger or apparent danger, as it reasonably appeared to the defendant at the time, viewed from his standpoint, and under such circumstances he shot and killed the deceased, he would be justified and you should acquit the defendant." In addition to this, the court, at the request of appellant, also gave the following special charge: "You are further instructed as to the law in this case that if you find that defendant had been told that deceased had made threats against his life, and he believed that said threats had been made by deceased at the time of the homicide, then in that event he would have the right to act the same as if the threats had been actually made, although you should find that no such threats were in fact made."

Appellant admits that in giving this special charge the law was correctly applied, but insists that it is in conflict with the above paragraph of the court's main charge in submitting the law of self-defense on the issue of threats. By a careful reading of the two paragraphs it will be seen there is no conflict in the two, for in the main charge the court not only told them if they believed threats had been made but also instructed them that "if the jury found report of threats had been communicated to defendant, whether they were actually made or not, and at the time deceased did some act which reasonably indicated to defendant that deceased was then about to put such threats into execution, he would be justified." Neither of the paragraphs are subject to the criticisms—in the first instance, that appellant was restricted to an actual attack, and, in the second, he was restricted to threats actually made.

All the special charges requested by appellant were given; and the only other criticism of the court's charge is that the court erred in authorizing the jury to find appellant guilty of murder upon implied malice, the contention being that as upon the former trial appellant had been acquitted of murder upon express malice, or murder in the first degree, and found guilty of murder upon implied malice, or murder

in the second degree, as the amended law had consolidated the two degrees, and defined the elements of both the former degrees as constituting now one offense, that appellant could not now be tried for murder upon implied malice. The record discloses that at the close of the testimony the court asked appellant if he desired the case submitted under the old law, or the new law, and appellant's counsel replied: "We will have it submitted under the old law"—that is the law in force at the time of the commission of the offense.

We have several times discussed this question and do not deem it necessary to do so again. The Legislature has never repealed the law defining a killing upon implied malice as murder, but merely consolidated and defined as one offense murder upon express and upon implied malice.

There are several bills of exception in the record relating to the introduction of the testimony. Three of them complain that different witnesses were permitted to testify that the reputation of Mrs. Elbert Eads, appellant's wife, for virtue and chastity was good. Appellant in his testimony had stated that he had caught deceased in an act of carnal intercourse with his wife, and to another act of indiscretion. The State could offer any legitimate testimony at its command to rebut such testimony. The law closed the mouth of his wife, unless he elected to call her as a witness, and this he did not do. Appellant, in killing his wife's father, had closed his mouth, and it seems that appellant placed the transaction at such a time and place that no other witness could have seen the transaction, and the only testimony at the command of the State to rebut this testimony was the reputation of his wife for virtue and chastity, and the court did not err in admitting the testimony. Cameron v. State, 69 Texas Crim. Rep., 439, 153 S. W. Rep., 867.

It appears that when deceased was found dead, the sheriff that night went to appellant's house and arrested him, and, after the arrest, the sheriff made search for arms and found a pistol in the loft and some cartridges. He testified to such facts, also as to the condition of the pistol. Appellant objected to this testimony on the ground that he was under arrest and was not with the sheriff when the pistol was found. Until appellant testified there was no positive evidence that he had slain the deceased; without his testimony it would be a case of circumstantial evidence, and the court did not err in admitting the testimony.

There are but two other bills of exception in the record; the first reads: "Be it remembered that upon the trial of the above entitled and numbered cause, the State proved by the witness Jim Light that the upper floor of the Aberdeen store building was used for lodge purposes, towit: by the Odd Fellows and Woodmen. To this testimony the defendant objected because the same was immaterial and irrelevant, the object and effect of such testimony being to show that deceased belonged to said lodge, which testimony would be prejudicial to the defendant from the fact that it would serve to prejudice any juror trying the case who might belong to either of said lodges." The second

reads: "Be it remembered that upon the trial of the above entitled
and numbered cause the defendant objected to the following questions
and answers to and from the State witness Tom Wall, towit: 'Do
you know when the lodge met at Aberdeen? Do you know. whether
or not any lodge met there that Saturday night? A. They did not.
Was that a meeting night of the lodge that he was killed? A. It
was.' To all of this testimony the defendant objected because it was
not relevant to any issue in this case, and likely to prejudice the minds
of the jury against the defendant, that it was not applicable to any
issue involved; and such testimony was calculated to arouse the preju-
dice in the minds of the jury against the defendant for the reason that
if any of said jurors should be members of such lodges they would be
prejudiced against anyone charged with the murder of his deceased
fraternal brother."

The court says, in approving these bills, that the only objection made
at the time was that the evidence was immaterial and likely to prejudice
the minds of the jury. But take the bills as they are presented by
appellant, and give full effect to all the objections therein stated, the
record fails to disclose that any member of the jury belonged to either
the Odd Fellows or the Woodmen, and certainly, under such circum-
stances, the objection that such testimony was calculated to arouse
prejudice *if any of the jurors* belonged to either of the orders, is not
well taken. If there was an allegation that some of the jurors *did
belong* to either of the orders, or any proof of that fact, there might
be merit in the contention. The objection that the testimony was
irrelevant and immaterial, without further specifications, is no objec-
tion, if the testimony would be admissible under any theory of the case.
McGrath v. State, 35 Texas Crim. Rep., 413; Carter v. State, 37 Texas
Crim..Rep., 403. It is made apparent that this testimony was intro-
duced to show that deceased was on his way from home to a meeting of
the lodge at the time he was shot. If the objection had been made
that this fact was unknown to appellant, and the State would not, there-
fore, be permitted to show why deceased was at this place, it would
perhaps have been a good objection and should have been sustained.
But in case that objection had been made, it may be that the State was
in possession of evidence to prove that appellant knew that deceased
traveled this road on Saturday evenings on the way to a meeting of
this order, and for this reason appellant made no such objection. For
if the State had made such proof, then the testimony would clearly
have been admissible. And in the absence of any objection, that such
facts were unknown to appellant, we can not now make such objection
for him and presume that he was not aware of these facts, or that the
State could not have so proven, if such an objection had been made.
Wilkerson v. State, 31 Texas Crim. Rep., 86; Blain v. State, 34 Texas
Crim. Rep., 417; Lookman v. State, 32 Texas Crim. Rep., 561. Again,
in Bozanno v. State, 60 Texas Crim. Rep., 507, this court held: "The
testimony was explanatory of the presence of the deceased at the place
where he was killed, which was quite a distance from the place where

his mother saw him, and was a mere matter of inducement. The cases in which the actions, declarations and intentions of a decedent are held not to be admissible against a defendant who has no notice of them, has always been limited to cases where the issue of self-defense arose in the case, and where such acts and movements of the deceased could be held to be hostile in their character, and where such defendant had a right to act upon an apparent hostile movement towards him which might, if the rule permitted it, be shown to be in fact innocent." An explanation that deceased was on his way to a meeting of the lodge could not and would not, in the least, tend to explain any of the hostile acts of deceased to which appellant testified, and which he relies on as a justification. He says when he met deceased, that deceased said: "I have been laying for you a long time; why didn't you sign that lie bill?" referring to a report which the record discloses appellant had put in circulation and which deceased had asked appellant to retract. Appellant says he replied, "Old man, I have stayed at home and tried to shun you to keep from having trouble with you, and you had better go on home and leave my business alone." That then deceased said, "I will attend to your business for you," threw himself forward in his saddle and threw his hand to his hip pocket as if to draw a weapon, and in the light of the communicated threats, he thought his life was in danger. If this is true, it would be immaterial where deceased was going—it would not abridge appellant's right of self-defense, and such evidence would not tend to explain to what would under such circumstances seem to appellant hostile acts of deceased. The State's theory of the case was that appellant took this road to his home, when there were others leading thereto, hid himself in a depression in the road, and shot deceased. If appellant was aware that deceased traveled this road on the way to the lodge on Saturday evenings, this would be material evidence for the State. And as before said, in the absence of an objection made by appellant that he was not aware that deceased traveled this road on his way to the lodge and such facts were unknown to him, we can not now make such objection for him, for it may be as hereinbefore stated that had he offered such objection to the testimony, the State could and would have shown that he was aware of the fact that it was the habit of his father-in-law to travel this road on Saturday evening on his way to the lodge. They lived but a few miles apart; were related by family ties, and would be supposed to be on familiar terms; at least until the trouble arose, which this record discloses occurred only a few months before the fatal encounter; the record discloses deceased's daughter and appellant had been married for years, and were the parents of three children.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE (dissenting).—Appellant was convicted of murder in the second degree, his punishment being assessed at eight years confinement in the penitentiary.

Proper exception was taken to the following charge: "Now if you shall believe from the evidence that defendant, Elbert Eads, killed A. J. Hopkins, yet if you believe the deceased made an attack on the defendant then indicating a purpose to take the life of the defendant, or of doing him some serious bodily injury; or if from the acts or words of the deceased at the time it then reasonably appeared to the defendant that he was in danger of losing his life, or of suffering serious bodily injury at the hands of the deceased, even though there was no actual danger in fact, but only apparent danger," etc. We think the exception is well taken. There was no evidence of any actual attack in this case. The evidence was one purely of demonstration on the part of deceased as if to draw a pistol and appellant shot. Upon another trial the court's charge should be limited to the case as made by the facts. There was no occasion for submitting an actual attack, when there were no facts to support it. The State introduced no evidence to show an actual attack, and the defendant's evidence was purely and simply a demonstration as if to draw a pistol. It was not a case of actual but of apparent danger only.

It will also be noticed that the charge submits entirely the belief of the jury—not the belief of the defendant. If the defendant believed that deceased reached for his pistol, then to him there was apparent danger. It is not what the jury believed about it, but it is what the defendant believed at the time. The appearance of danger is to be viewed from his standpoint and as he saw it and not as the jury believed about it.

An exception was reserved to the thirteenth subdivision of the charge, which reads as follows: "Now, if you shall find that the deceased made threats against the life of the defendant, and that such threats had been communicated to the defendant before the difficulty in which deceased lost his life, or if you find that report of threats had been communicated to the defendant whether they were actually made or not, and you find at the time of the homicide, if any, the deceased did some act which then reasonably indicated to the defendant that he was then in imminent and pressing danger at the hands of the deceased of losing his life or of suffering serious bodily injury, and that deceased was then about to put such threats into execution, and acting upon such danger or apparent danger, as it reasonably appeared to the defendant at the time, viewed from his standpoint, and under such circumstances he shot and killed the deceased, he would be justified," etc. The objection to this charge was that it required the jury to find that threats had actually been made by deceased against the defendant, and in fact it is not necessary that such threats should have been actually made if they had been conveyed to defendant and he believed same he had the right to act upon threats, even though such threats had not been made and such information given to the defendant may have been false. The appellant asked a charge, which was given, which correctly presented the law of the case, but the trouble here is, the court had given two charges which are contradictory, the court's charge being error. In

the court's charge the jury was required to believe that the threats had been made, and that they should believe that the reported threats had been communicated to defendant. Again it may be stated these charges are contradictory; one submitted it to be determined by the jury whether these matters occurred, and the other that they had been communicated to defendant and he believed them. Upon another trial the charge with reference to threats should be given correctly. If these threats had been communicated to defendant and he believed them, he was entitled to be acquitted from that standpoint, provided, of course, the deceased made some act, but this should be viewed from the standpoint of the defendant, that he believed such things and not that the jury believed them. It was a serious question in the case, and one that involved defendant's liberty before the jury. The charge of the court is incorrect and that requested by appellant is correct, and the two charges stood before the jury in this contradictory position. They may have believed that defendant's testimony was false, or they may have discarded it; they may have believed the threats were not made, when in fact the defendant did believe it. The law of self-defense depends upon his belief and not the belief of the jury. As was said by Judge Harper on the former appeal of this case, 170 S. W. Rep., 146: "The defendant testified to threats being communicated to him; two witnesses testified they had communicated the threats to defendant. The State did not concede that the threats had been made, but seriously contested that issue, and yet the court in his charge required the jury to find that the threats had been made, instructing them: 'Now if you shall find that the deceased had made threats against the life of defendant, and that such threats had been communicated to the defendant,' etc. This is not the law where there is an issue in the case as to whether or not the threats had been made, but if defendant had been told that threats had been made by deceased and he so believed, he would have the right to act, even though the threats had not in fact been made. Buckner v. State, 55 Texas Crim. Rep., 511, 117 S. W. Rep., 802, and cases there cited." Now we have an erroneous charge given by the court and a special requested instruction by the defendant which was practically correct. The two charges are in direct conflict. The question may be asked, by which charge was the jury governed? Inasmuch as he was convicted, we are led to the conclusion they were controlled by the court's main charge and not the special instruction given. If they believed threats were not made or communicated, then appellant's theory of the case had vanished. They may have believed that, and the verdict of the jury indicates they did believe it.

There are bills of exception reserved to the introduction of testimony. These are to the effect that the State was permitted to introduce testimony that deceased at the time of the meeting between himself and appellant was en route to attend a lodge meeting in the town of Aberdeen. There is nothing to show that defendant knew the deceased was going to Aberdeen to attend a lodge, and the evidence shows it was an accidental meeting, the appellant going one way and the deceased com-

ing in the direction that caused them to meet. If appellant had traveled the road that he was traveling, knowing the deceased was coming that way and was going to the lodge, this testimony might have been admissible. The undisclosed motives or purposes of deceased could not affect the appellant's right of self-defense, at least unless it was shown that he anticipated or believed or knew that he would meet the deceased or come in contact with him. See Bozanno v. State, 60 Texas Crim. Rep., 507. In that case Judge Ramsey uses this language: "The first is that the court erred in permitting the witness Mrs. Albert Dunlap, over the objection of defendant, to testify as to the movements and actions of the deceased, Denny Harris, on the day of the homicide and prior thereto, because said actions and movements were not in the presence of appellant and there was no testimony showing that he had any knowledge of said actions and movements of Denny Harris, and appellant could not be charged with the knowledge of such movements and the causes thereof. This witness testified in substance that deceased left her house about 11:30 o'clock the morning he was killed; that he came by where she was stopping with her daughter; that he had a lead horse; that he stated he was going out to George Foreman's to take the horse there, and that he was going to the next house to get a saddle. This, it appears from the statement of facts, was objected to for the reason that appellant was not present and the movements of Harris on that day can not be charged to him and is no evidence against him. The testimony was explanatory of the presence of the deceased at the place where he was killed, which was quite a distance from the place where his mother saw him, and was a mere matter of inducement. The cases in which the actions, declarations and intentions of a decedent are held not to be admissible against a defendant who has no notice of them, has always been limited to cases where the issue of self-defense arose in the case, and where such acts and movements of the deceased could be held to be hostile in their character, and where such defendant had a right to act upon an apparent hostile movement towards him which might, if the rule permitted it, be shown to be in fact innocent." Following that rule and its application, we are of opinion that the testimony of the fact that deceased, on the particular occasion, had left his home and was going to Aberdeen to attend a lodge meeting, where there is no evidence to show defendant knew of it and that the meeting was accidental, would be inadmissible. It was crucial testimony in the case as shown by the opinion in the Singleton case, 74 Texas Crim. Rep., 71, 167 S. W. Rep., 46, and quite a number of other cases. If appellant knew, or had reason to believe, that he would meet the deceased, and that he was going to the lodge, and he traveled this road for the purpose of meeting him, or knowing that he would meet him, under the facts of this case the animosity and threats which had been communicated to him, it would be admissible against him, and would be damaging testimony, for the defendant in this case testified he could have gone another or other road home. So without making some showing that appellant understood or believed he would meet the deceased,

this testimony was inadmissible, and it was on a very crucial point in his case, affecting his right of self-defense. This testimony ought not to have been admitted. The court in his explanation says he admitted it on the theory of res gestae. The doctrine of res gestae does not apply.

For the reasons indicated I think the judgment ought to be reversed and the cause remanded. The above was written, but my associates did not agree with me, wherefore they wrote the affirming opinion.

### ON REHEARING.

#### May 19, 1915.

HARPER, JUDGE.—Appellant has filed a motion for rehearing herein, and his counsel have filed an able brief in support thereof. The earnest insistence of counsel, and the fact that our senior justice, Judge Davidson, has filed a dissenting opinion, has caused us to give to the record, the argument of counsel, and the authorities cited, most careful and thoughtful study.

The first ground complains of the charge of the court on self-defense in two particulars: "First, the charge makes the right of the defendant to depend upon actual attack made by the deceased, and, second, the charge complained of only required the jury to believe from the evidence that defendant killed deceased, Hopkins, and only required the jury to believe that deceased made an attack on the defendant that indicated a purpose upon the part of the deceased to take the life of defendant." If these criticisms of the charge are just, then the argument of appellant would be sound, but the charge, copied in the original opinion, shows that the court instructed the jury: "If from the acts and words of the deceased at the time it then reasonably appeared to defendant that he was in danger of losing his life, or of suffering serious bodily injury at the hands of the deceased, even though there was no actual danger in fact, but only apparent danger, and that such danger reasonably appeared to the defendant to be imminent and pressing, viewing the matter from the standpoint of the defendant alone, and in the light of the circumstances as they reasonably appeared to the defendant, and under such circumstances defendant shot and killed A. J. Hopkins, you should acquit the defendant." This is not a charge upon actual danger, but upon reasonable appearances of danger as it appeared to the defendant, and not, as contended, as it appeared to the jury. The charge itself answers the criticisms and shows them not to be well founded. It does not limit appellant's right to act from actual danger alone, but authorizes an acquittal of appellant, if from the acts and words of deceased it reasonably appeared to him (appellant) that he was in danger of losing his life or in danger of suffering serious bodily injury at the hands of deceased.

It is next contended that the court's charge on threats "makes the right of appellant's right of self-defense depend upon the deceased putting actual threats into execution, and that threats had in fact been

made." We would say again, if the charge does do so, it is error, but we do not think the charge is subject to any such construction. In this instance, as in the other, this paragraph of the charge is copied in full in the original opinion, and it instructs the jury: "If you shall find that report of threats had been communicated to defendant, *whether they were actually made or not,* and you find at the time of the homicide, if any, the deceased did some act which then reasonably indicated to the defendant that he was then in imminent and pressing danger at the hands of deceased of losing his life, or of suffering serious bodily injury, and that deceased was then about to put such threats into execution, and acting upon such danger or apparent danger, *as it reasonably appeared to the defendant at the time, viewed from his standpoint,* and under such circumstances he shot and killed the deceased, he would be justified and you should acquit the defendant." This excerpt shows that the court did not require the jury to find that the threats had been actually made, but instructed them if threats had been communicated to defendant, whether actually made or not, he would have the right to shoot and kill if deceased at the time by his acts or words manifested an intention to kill him or do him serious bodily injury. Nor is this charge in any ways in conflict with the special charge requested and given, but the special charge is but supplemental to this charge, and emphasizes the fact that defendant had the right to act if threats had been communicated to him, and he was led by the acts and conduct of deceased, in the light of the communicated threats, to believe his life was in danger. The only authority that appellant cites us to is Buckner v. State, 55 Texas Crim. Rep., 511, opinion on motion for rehearing. With the law as announced in the Buckner case, we agree, as is manifest by our opinion on the former appeal in this case reported in 74 Texas Crim. Rep., 628. In the Buckner case, supra, the court instructed the jury, "if you believe the deceased had made such threats," etc. In this case the court instructs the jury, "if you find that report of threats had been communicated to the defendant, whether they were actually made or not." There appears to be no difference between appellant and this court on the law, but rather on the construction to be given language used by the court. A reading of the charge on this matter, copied in the original opinion, will, we think, demonstrate that the construction attempted to be placed by appellant on the language used by the court is untenable, and the charge of the court is in strict conformity with the law as announced in the Buckner case, and by this court on the former appeal in this case, and in all cases decided by this court so far as we are aware.

In the next place appellant contends that we erred in holding that the lower court committed no error in admitting the evidence of the witnesses Light and Wall, over the objections then made, appellant admitting that no objection was made that appellant did not know of deceased's custom in going to the lodge, and did not object that the motive of deceased in going this road was unknown to him, but he contends that whether he made such objection at the time or not, if

he now calls our attention to such objection to the testimony we ought
to hold that the trial court committed error. To do so would overrule
every decision heretofore rendered by this court. In McGrath v. State,
35 Texas Crim. Rep., 413, this court held: "Where the objection is
to the admissibility of testimony, the very ground of objection should
be stated, and that the specified ground of objection should be stated."
In McGlasson v. State, 38 Texas Crim. Rep., 351, it is held that a bill
of exceptions must disclose the ground or grounds of objection to the
testimony, and grounds not stated are not entitled to be considered on
appeal, citing Willson's Crim. Proc., sec. 2516, and authorities there
cited, and Cline v. State, 34 Texas Crim. Rep., 347; Buchanan v. State,
24 Texas Crim. App., 195; Smith v. State, 4 Texas Crim. App., 626.
This is also the rule of our Supreme Court, it being held that a bill of
exceptions to evidence must state ground of objection to the testimony
in order to receive consideration. Coleman v. Smith, 55 Texas, 254;
Gulf Ry. v. Brown, 16 Texas Civ. App., 102. And our Court of Civil
Appeals hold that "an objection to testimony not shown in the bill of
exceptions will be disregarded on appeal." Fields v. Haley, 52 S. W.
Rep., 115. In fact, this seems to be the universal rule. In Thompson
on Trials, section 2786, it is said: "Objections made in the course of
the trial must be stated to the trial court and must be incorporated in
the bill of exceptions. An appellate court can consider only such ob-
jections as were presented to the trial court, and thus brought to its
notice for review," citing authorities from almost every State in the
Union. We could continue the citation of authorities, but they will
be found collated in sections 857 and 1123 of White's Ann. Proc. The
reason is plain, if the objections urged at the time, in the light of the
testimony in the case, are not tenable, if the objections sought to be
urged in the appellate court for the first time, had been made in the
trial court, they might also have been shown by evidence not to be
tenable. It is the objections urged at the time the testimony is offered
we are permitted to consider. In the original opinion we demonstrate,
we think, the objections in the trial court were not tenable, and this is
not contested in the motion for rehearing, but it is only insisted that
we should permit them in this court, for the first time, to urge an ob-
jection to testimony not offered at the time the testimony was admitted.
As before said, to so hold would overrule all the decisions of this court
heretofore rendered from the day of its organization, and we are not
willing to do so, for we think the rule is a correct one, and the opinions
so holding state many sound reasons for doing so. In fact the rules
adopted by our Supreme Court provide that "exceptions to the admis-
sion of evidence, where the ground of objection is assigned, shall be
considered in reference to the objection made to it."

These are all the grounds stated in the motion for a rehearing, but
in a supplemental argument filed, exception is taken to the statement
that the State's theory was, "that appellant took this road to his home,
when there were others leading thereto, hid himself in a depression in
the road, and shot deceased." The exception made is that the record

does not bear out the deduction "hid himself in a depression in the road." We have carefully read the record again, and it shows that appellant traveled a road going east from Aberdeen's store a short distance, then turned south in a lane that would lead to the home of deceased. In this lane are two depressions, one a very deep one, which the record shows the appellant had got beyond; a second depression, in which some of the witnesses say deceased was lying; others say he was lying just as one would come out of this second depression. Some witnesses say that one traveling this lane going north could not see one in this depression until he got near it; the defendant's testimony is otherwise, but it will be noticed that in the opinion we merely stated what was the State's theory of the case, and this appellant does not question but only insists that the record would show that the killing took place on the brow of the hill, after coming up out of the depression. We make this statement, as appellant's counsel seem to desire it to be done, but this fact would have no bearing in passing on the questions raised on this appeal.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE.—I dissent to the overruling of the motion, but do not care to write further than shown in filed dissenting opinion.