Carl JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 65844.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 10, 1981.

Rehearing Denied Feb. 10, 1982.

Donald W. Rogers, Jr., Houston, court appointed on appeal, for appellant.

John B. Holmes, Jr., Dist. Atty., Molly Naylor, W. F. Roberts and Chris Lorenzen, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for capital murder. The jury, after answering affirmatively special issues one and two pursuant to Art. 37.071, Vernon's Ann.C. C.P., assessed punishment at death. The sufficiency of the evidence is not challenged.

By his third ground of error, appellant contends that the trial court committed fundamental error by failing to submit the issue of provocation on the part of the deceased pursuant to the mandatory provisions of Art. 37.071(b)(3), supra. Art. 37.-071(b)(3) provides:

"(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

\* \* \* \* \* \*

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

The record of the guilt stage of the trial reflects that appellant and Carl Baltimore entered Wayne's Food Market and committed a robbery. Baltimore held a gun to the owner's head; the appellant shot the 75-year-old security guard five times. The men took the money from the cash register and fled. During the punishment phase of the trial, the prosecutor read the appellant's confession to the jury.[1] Appellant contends for the first time on appeal that the following portion of his confession raises the issue of provocation,

"I put the pistol in my pants and went inside the store with Baltimore. When we got inside, I saw a black man who I knew was a security guard. I knew he was a security guard because I have bought beer at Wayne's Supermarket since I have been old enough. I have known this security guard most of my life. And I called this man Ed. I think that is his real name. I had my hand on the butt of the pistol, and the security guard saw me and pulled his pistol and shot at me one time. At that time I ducked and pulled my pistol, which was a .38 revolver, and shot in the direction of the security guard. I was not aiming at him and was not trying to kill him. I think I shot four or five times, but I am really not sure."

In *Evans v. State*, 601 S.W.2d 943 (Tex. Cr.App.1980), the Court found that evidence taken from the defendant's confession that the deceased fired a shot at the defendant before the defendant shot at the deceased raised the issue of provocation. In *Evans* the Court held that the refusal to submit special issue number three after defend-

---

1. The confession was introduced in evidence at the guilt stage.

ant's timely request constituted reversible error.[2]

■ In the instant case, as in *Evans*, appellant's statement in his confession that the deceased fired at appellant first raised the issue of provocation. It is settled that an accused is entitled to an instruction on every defensive matter raised by the evidence. The testimony of the defendant alone is sufficient to raise the issue. *Garcia v. State*, 605 S.W.2d 565 (Tex.Cr.App.1980).

Having determined that the issue of provocation was raised, the question is presented as to whether the failure of the trial court to submit the instruction sua sponte constitutes reversible error.

We agree with appellant that the language of Art. 37.07(b), supra, is mandatory. Thus, it was error to fail to submit the issue once raised. However, failure to object to the charge as submitted to the jury, waives all but fundamental error. See *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978). The appellant contends that the omission constitutes fundamental error. We disagree.

In *Martinez v. State*, 576 S.W.2d 854 (Tex.Cr.App.1979), the defendant, convicted of sexual abuse, contended that the court's charge was fundamentally erroneous because there was no instruction pursuant to Art. 38.07, Vernon's Ann.C.C.P. The Court held:

"Although the appellant failed to object to the court's charge at trial, he presently argues that the provisions of Article 38.-07, supra, are mandatory and that the court's failure to sua sponte comply with its provisions renders the court's charge fundamentally defective.

We agree with the appellant insofar as he contends that the directives of Article 38.07, supra, are mandatory; however, we cannot agree that the court's failure to so instruct the jury, in absence of appel-

lant's objection or requested instruction, constitutes fundamental error. See *Pitts v. State*, 569 S.W.2d 898 (Tex.Cr.App. 1978)."

In *Williams v. State*, 622 S.W.2d 116 (1981), the murder defendant argued that Article 37.071, Vernon's Ann.C.C.P. violated the Sixth, Eighth and Fourteenth Amendments because it contained no provisions for directing and instructing the jury's consideration of mitigating circumstances at the punishment phase of the trial. The Court stated:

"It is appellant's contention that a 'charge on all mitigating evidence at the punishment phase of a capital murder trial is imperative if the jury is to give meaningful consideration to such evidence.' The appellant has failed to preserve the error now asserted on appeal. No objection to the court's charge or special requested instruction was filed. Articles 36.14 and 36.15. Absent such an objection or requested instruction, the trial court's failure to charge the jury as to the consideration of mitigating circumstances was not reversible error."

We hold that, in the absence of a timely objection, the failure to charge the jury on special issue number three does not constitute reversible error. The contention is overruled.

In ground of error one, appellant maintains that the trial court erred in excluding the testimony of one of his witnesses at the punishment stage, Shelvy Brown. Brown testified that he was the pastor at a Baptist church. He stated that he knew the appellant from visiting his grandmother and mother when they were ill and on other occasions. Brown also said that he visited appellant once when he was in jail. Defense counsel asked the witness,

"Q. Based on knowing him and knowing his family, do you know his reputa-

---

2. The reason for this conclusion is explained in *Evans* as follows:

"Firing his pistol only after being fired upon rendered appellant less culpable than an armed robber who kills without provocation. The jury should have been allowed to con-

sider this mitigating circumstance in the context of the third punishment issue. Appellant's imperfect self-defense claim may have been sufficiently mitigating to warrant a sentence of life imprisonment."

tion for being a peaceful, law-abiding citizen?

A. From the time I met him, it would be nice.

\* \* \* \* \* \*

Q. Is that reputation good or bad?

A. Good."

On cross-examination the prosecutor asked Brown:

"Q. And who have you talked to about his reputation?

A. I talked to him personally, to his people, his sister.

Q. I am sure that they feel he has a good reputation. Who else have you talked to?

A. The only thing I can speak for was for how he was, he treated me. I never seen him violent as far as I am concerned.

Q. So, all you are saying is that you know what he told you and how he treated you, and that is what you are basing your statement on?

A. Not necessarily. I have been around him on occasion with the young people who were also there all together.

Q. Have you heard that this defendant, on the 18th day of December of 1976, was arrested for carrying a weapon?

MR. SCARDINO: We object to that question.

THE COURT: Overruled.

Q. (By Mr. Roberts) You may answer that question.

A. Yes, I did hear of that.

Q. You heard that?

A. Yes, sir.

Q. Did you hear that on the 11th day of October, 1978, this defendant was arrested for the offense of capital murder?

MR. SCARDINO: Again, we object to the form of the question.

THE COURT: Again it is overruled. You may answer it.

A. Yes, I have heard that also.

Q. (By Mr. Roberts) And have you heard that on the 11th day of October of 1978 this defendant committed the offense of aggravated robbery?

A. No, I didn't hear about any robbery.

MR. SCARDINO: Again, we object.

THE COURT: Overruled.

Q. (By Mr. Roberts) And have you heard that in your hometown of Livingston, Texas, on the 26th of January of 1976 this defendant was arrested for the offense of theft?

MR. SCARDINO: We object.

THE COURT: Overruled. You may answer.

A. In the hometown of Livingston, no, sir, I haven't heard of him in Livingston.

Q. (By Mr. Roberts) If you had heard all those things, would you still have the opinion that he has a good reputation?

A. I said as far as I know.

Q. Well, I'm asking you that question. If you had heard all those things, would you still have the opinion that he has a good reputation?

A. As far as I am concerned, he do have a good reputation.

Q. So, there is nothing I could say or nothing that you could hear that would change your mind about his reputation?

A. Not necessarily.

Q. *You are basing your opinion about his reputation on just knowing him?*

A. *On the time I met him and have been around him, that is all I can say.*

Q. *You are not basing your opinion about his reputation at all on what you have heard other people say?*

A. *I can't base it on what I hear.*

MR. ROBERTS: I object to his testimony, then. He doesn't know his reputation.

THE COURT: Sustained.

MR. ROBERTS: Would ask that the jury be ordered to disregard his testimony entirely.

THE COURT: The jury is so ordered to disregard the testimony of this witness. You may step down, sir." (Emphasis added)

██ The appellant did not object to the trial court's action, thus nothing is preserved for review. We note, however, that the trial court ruled properly; the witness stated that his knowledge of appellant's reputation was based upon his personal encounters with appellant, not upon appellant's reputation in the community. See *Patrick v. State*, 156 Tex.Cr.R. 449, 243 S.W.2d 707 (1951). Contention number one is overruled.

Next, the appellant contends it was improper for the prosecutor to ask Shelvy Brown if he had heard that on October 11, 1978 the appellant had been arrested for the offense of capital murder. Appellant argues that it has long been recognized that it is improper to allow the State to test a witness' knowledge of an accused's reputation by questions based solely upon the alleged offense for which he is on trial. *Stephens v. State*, 128 Tex.Cr.R. 311, 80 S.W.2d 980 (1935). *Stephens v. State*, supra, relied upon by appellant is not applicable in the instant case. In *Stephens*, the defendant's indictment for the charged offense was the sole issue discussed in determining his reputation. In that case, the Court held:

"In all criminal cases the defendant is presumed to be innocent, and the indictment against him should not be used to destroy that presumption of law, nor can the indictment be appropriated by the jury as any evidence of guilt; neither should the same be used to impugn his good reputation which he has established by many years of good conduct and obedience to the law. If it were otherwise, it would give weight to a presumption against him arising entirely out of the charge contained in the indictment for which he is being tried. If the discussion of the charge contained in the indictment could be used as a basis for showing that a man's reputation as a law-abiding citizen was bad, then no man who was on trial could successfully show a good reputation as a law-abiding citizen."

In *Ward v. State*, 591 S.W.2d 810 (Tex.Cr. App.1978), the Court, quoting from *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972), stated:

"The general rule is that, as part of its cross-examination, the State is permitted to ask the character witness if he has heard of a specific act of misconduct. However, the State may not ask whether the witness had personal knowledge of the act, nor may the question be framed so as to imply that the act has actually been committed. The State, as a prerequisite for asking the question, must have a good faith belief that the act actually occurred. *Hart v. State*, 447 S.W.2d 944 (Tex.Cr.App.1970); *Stewart v. State*, 148 Tex.Cr.R. 480, 188 S.W.2d 167 (1945). [Footnote omitted].

\*    \*    \*    \*    \*    \*

The only requirement is that the act be inconsistent with the character trait about which the witness has testified. See *Pace v. State*, 398 S.W.2d 123 (Tex. Cr.App.1965).

\*    \*    \*    \*    \*    \*

It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the purpose is to affect the weight of the witness' testimony."

██ We find that the trial court did not err in overruling appellant's general objection to the have-you-heard question. The contention is overruled.

██ In grounds of error four, five, and six, appellant contends that three veniremen were improperly excused "pursuant to the unconstitutional provisions of Sec. 12.-31(b) of the Penal Code." The appellant concedes that there were no objections to the dismissals of the veniremen by the court, but argues that trial counsel could

not fairly be expected to object on a ground held meritless by this Court prior to his trial. Appellant's contentions have been raised and decided adversely to his position in *Crawford v. State*, 617 S.W.2d 925 (Tex. Cr.App.1980) (opinion on rehearing). The grounds of error are overruled.

Appellant, in ground of error eight, contends the trial court committed fundamental error by failing to give the jury limiting instructions on extraneous offenses in the charge at the punishment phase of the trial. The appellant at trial did not request such an instruction, nor did he object to the charge because it failed to include such an instruction. In the absence of an objection, the failure to submit an instruction on extraneous offenses is not fundamental error. See *Romo v. State*, 568 S.W.2d 298 (Tex.Cr.App.1978) (opinion on rehearing). The ground of error is overruled.

Appellant argues in ground of error seven that he was denied the effective assistance of counsel in violation of his constitutional rights. He maintains that his arrest was illegal; therefore, if trial counsel had properly presented a motion to suppress, the appellant's confession, taken soon after his arrest, and the weapons and stolen property found with appellant at that time would have been inadmissible. We are unable to agree with appellant that the record reflects his arrest was illegal.[3] Further, appellants' speculation that a "reasonable possibility" existed for the exclusion of the confession and other evidence is not evidence that counsel was ineffective. The record shows that trial counsel filed a motion for a hearing on the voluntariness of appellant's confession. The hearing was held and the trial court concluded that the confession was voluntary. The adequacy of an attorney's representation is not to be judged by hindsight. *Howell v. State*, 563 S.W.2d 933 (Tex.Cr.App.1978).

Appellant maintains that ineffectiveness of counsel was demonstrated by counsel's failure to object to the omission in the charge of an instruction on extraneous offenses and, because appellant was circumstantially connected to the extraneous offense, circumstantial evidence. Also, the failure to request an instruction on special issue number three indicates that counsel had no basic understanding of the capital punishment scheme and procedures, he urges. The isolated instance of a failure to object will not necessarily render counsel ineffective. *Passmore v. State*, 617 S.W.2d 682 (Tex.Cr.App.1981). Regarding the failure to request an instruction of special issue number three, we note that *Evans v. State*, supra, had not been decided at the time of appellant's trial and there were no other cases from this Court on that issue to provide guidance to defense counsel. While such a charge would have specifically enabled the jury to consider the previously discussed portion of appellant's confession in mitigation of punishment in the context of the third punishment issue, we do not hold that the failure to object to this omission in and of itself renders counsel ineffective.[4] See *Howell v. State*, supra. The adequacy of an attorney's assistance is based upon the totality of the representation. *Passmore v. State*, supra; *Johnson v. State*, 614 S.W.2d 148 (Tex.Cr.App.1981).

The appellant further argues that the record of the voir dire examination reveals many shortcomings in counsel's representation of appellant. Appellant maintains that the examination by counsel was "perfunctory and unskilled," that counsel improperly allowed the trial court to inquire as to the panel's understanding of the words "deliberately" and "probability," and finally that counsel exercised peremptory challenges prior to determining if the State would

---

**3.** At the hearing on the voluntariness of the confession, Officer Young testified that he went to a residence looking for Carl Baltimore. Appellant was arrested at that residence because he matched the description of one of the robbers at the Wayne Food Store. It was not developed, but it was indicated that the police were aware of appellant's involvement from a confidential informant.

**4.** We also note that testimony of witnesses to the robbery is in conflict with appellant's version of the shooting.

have excused such jurors. The voir dire examination of the potential jurors constitutes more than 1,300 pages of this record. This Court will not second guess the strategy of trial counsel. See *Passmore v. State*, supra. The test to be applied in determining whether counsel provided constitutionally satisfactory services is the "reasonably effective assistance" standard. *Passmore v. State*, supra. The trial court appointed two attorneys to represent appellant. The record as a whole reflects that appellant was afforded the reasonably effective assistance of counsel. The contention is overruled.

No reversible error having been presented, we affirm the judgment.

TEAGUE, J., not participating.

CLINTON, Judge, dissenting.

Article 37.071, § (b)(3) provides:

"On conclusion of the evidence, the court *shall* submit the following issues to the jury:

(1) * * *

(2) * * *

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." [1]

The majority finds the evidence introduced by the State raised the issue, the statutory language is mandatory and the trial court erred in failing to submit the issue, but then says that there was a "waiver," in that his counsel did not object, which saves a failure on the part of the trial court to do that which the statute mandates from being reversible error. I respectfully dissent.

No case cited by the majority defeats the ground of error. In *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978) the court proposed to submit the third Article 37.071(b) issue to the jury in terms precisely adapted from the statutory language, *viz*:

"Do you find from the evidence beyond a reasonable doubt *whether* the conduct of the defendant, Harvey Joseph Duffy, Jr., in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

Though the wording was called to his attention by the trial court, attorney for Duffy made no objection.[2] On direct appeal appellate counsel, who did not try the case, argued that by using "whether" instead of "that" the trial court made the issue so unclear, vague and inconclusive that an affirmative answer is similarly ambiguous. The Court rejected the contention on the legal theory that "acquiescence in and absence of an objection to *the form* of the charge waives all but fundamental error," citing primarily *Rummel v. State*, 509 S.W.2d 630 (Tex.Cr.App.1974).[3] Still, secondarily, the Court went on to find "there is no error in this portion of the charge," and then overruled the ground of error, *id.* 567 S.W.2d at 204.

*Martinez v. State*, 576 S.W.2d 854 (Tex.Cr.App.1979), like all other decisions the *Duffy* Court directs the reader to see, involves an alleged faulty portion of the main charge on guilt-innocence. Even at that stage, however, as one of them confirms:

"This Court has consistently held that where no objection is made to the court's charge ... a judgment will not be reversed on appeal because of error in the charge unless it appears that he has not

---

1. All emphasis is mine unless otherwise indicated.

2. See the sequel in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), which set aside the judgment of conviction and remanded Duffy to custody of the Sheriff to answer the indictment.

3. In *Rummel v. State*, supra, on his plea of "True" the trial court submitted a charge on punishment that required the jury to assess punishment *unless* it found his special pleas

"True," and the jury so found. On appeal Rummel contended "the court erred in withdrawing the question of punishment from, and submitting only a charge as to the special pleas to the allegations of prior felony convictions to, the jury." Noting that his trial counsel affirmatively stated "no objection," the Court did make the point attributed to it by the majority, and overruled the ground of error because nothing was presented for review in respect to the charge.

had a fair and impartial trial.  \* \* \* Thus, we are confronted with the question of whether the errors in the court's charge constitute fundamental error." *Harris v. State*, 522 S.W.2d 199, 201 (Tex. Cr.App.1975).

Here, though confronted with the exact same question, the majority does not address it. Rather, it changes the question to "whether the failure of the trial court to submit the instruction sua sponte constitutes reversible error," and is content to say that it does not—"in the absence of a timely objection." All of that strikes me as circular, and I will undertake to address headon the question of fundamental error.

"Fundamental error is presented where the error in the court's instruction to the jury goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted. *Harris v. State*, 522 S.W.2d 199 (Tex.Cr.App.1975)." *Martinez v. State*, supra, at 855.

And to that general proposition the *Martinez* Court tied on the provision of Article 36.19, V.A.C.C.P., that though any requirement of Articles 36.14,[4] 36.15,[5] 36.16,[6] 36.17[7] and 36.18,[8] V.A.C.C.P., be disregarded, yet

4. The charge of the court generally, and making objections thereto.

5. Requested special charges.

6. Final charge.

7. Charge certified by Judge.

8. Jury taking charge to juryroom.

9. The legislative metamorphosis is reflected in contemporaneously rendered opinions of the Court: *Ryan v. State*, 64 Tex.Cr.R. 628, 142 S.W. 878, 883 (1911); *James v. State*, 72 Tex. Cr.R. 457, 163 S.W. 61, 62, 63–64 (1914); and *Wright v. State*, 73 Tex.Cr.R. 178, 163 S.W. 976, 977–978, 979–980 (1914); *Quinn v. State*, 164 Tex.Cr.R. 125, 297 S.W.2d 157 (1957). As the last cited opinion read the predecessor to Article 36.19, supra, "It merely says that a disregard of the statute *plus* injury must be shown in order to bring about a reversal of the conviction," *Quinn*, supra, 297 S.W.2d at 159. Throughout, however, a constant exception to the legislative inhibition has been "unless fundamental error is presented," *Wright*, supra, 163 S.W. at 978, and *Harris*, supra.

the judgment is not to be reversed "unless the error . . . was calculated to injure the rights of the defendant, *OR* unless it appears from the record that the defendant has not had a fair and impartial trial." The proposition stated in *Harris* and the provision of Article 36.19 just quoted were developed long before the Legislature bifurcated a trial into two phases: guilt-innocence and punishment.[9] But an error found in that portion of the unitary charge relating to assessing punishment could be, and often was, considered fundamental: e.g., *Graham v. State*, 29 Tex.App. 31, 13 S.W. 1013, 1014[10] (1890). Today, so far as I can determine, for the first time, we must examine the question in the context of a capital case with its own special issue submission adopted even more recently.[11]

When the Supreme Court of the United States upheld the Article 37.071(b) portion of the Texas capital punishment scheme in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) it wrote with respect to the first and third special issues:

"The Texas Court of Criminal Appeals has not yet construed the first and third questions; thus it is yet undetermined whether or not the jury's consideration of

10. "It has been repeatedly held that if the charge incorrectly instructs as to the penalty for the offense, it is fundamental error, for which the conviction will be set aside although the error be not excepted to, and although it may be an error inuring to the benefit of the defendant [citing authorities]." See also *Hargrove v. State*, 30 S.W. 801 (Tex.Cr.App.1895) and the host of cases annotated at note 22 following Article 36.19, supra.

11. In *Williams v. State*, 622 S.W.2d 116 (Tex. Cr.App.1981), upon which the majority also relies, the contention rejected for failure of *Williams* to comply with Articles 36.14 and 36.15, V.A.C.C.P., was that Article 37.071, V.A.C.C.P., is unconstitutional in that it makes no provision for instructing and directing the jury in its consideration of mitigating circumstances. Here, however, we deal with what is conceded to be a mandatory statutory provision that should have been included—not a general proposition devised by an appellant. Thus, I do not regard *Williams* as controlling in this quite different situation.

those questions would properly include consideration of mitigating circumstances. In at least some situations the questions could, however, comprehend such an inquiry. For example, the third question ... might be construed to allow the jury to consider circumstances which, though not sufficient as a defense to the crime itself, might nevertheless have enough mitigating force to avoid the death penalty.... We cannot, however, construe the statute; that power is reserved to the Texas Courts." *Id.*, at 272, 96 S.Ct. at 2956, n. 7.

Thus, though our statute does not explicitly prescribe mitigating circumstances in terms, the Supreme Court read issues one and three facially to admit a consideration by the jury of mitigating circumstances in some situations, and on that basis was able to uphold the entire scheme. Compare *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

That the constitutionality of our procedures turns on whether the questions allow consideration of particularized mitigating factors as ultimately construed by the Court was quickly perceived in, e.g., *Brown v. State*, 554 S.W.2d 677 (Tex.Cr.App.1977). The holding on *Brown*, supra, was expressly reaffirmed by this Court in *Evans v. State*, 601 S.W.2d 943 (Tex.Cr.App.1980), and the third issue was construed "to permit the jury to consider particularized mitigating circumstances"—there, as here, "the situation where the evidence raises an imperfect self-defense claim," *id.*, at 946. The rationale is clear:

"The sole purpose of the punishment issues is to aid the jury in determining whether the proper punishment is life imprisonment or death. Because the provocation issue was not submitted, the jury failed to receive adequate guidance in its punishment deliberations, and its consideration of mitigating circumstances was limited. Such a result is contrary to this Court's decision in *Jurek v. State* [, 522 S.W.2d 934 (Tex.Cr.App.)] and the Supreme Court's decision in *Jurek v. Texas*." [12]

Jury consideration of mitigating circumstances inherent in the third special issue is, therefore, of constitutional dimension.[13] Its nature and quality are thus far above the level of quibbling over the "form" of the issue in *Duffy* and omitting what is essentially a precautionary limiting instruction in *Ramirez*. We deal here with the sine qua non of jury determination of death or life imprisonment—that the jury be given "adequate guidance in its punishment deliberations" that does not limit "its consideration of mitigating circumstances," *Evans*, supra, at 946.[14] In this light failure to provide the guidance mandated by a constitutionally ac-

---

**12.** While the *Evans* opinion goes on to hold that the trial court should have granted his request that the third issue be submitted to the jury, and does not intimate the result where, as here, an objection is not made, the Court reiterates the purpose of the punishment issues when it comes to rejecting the State's contentions that reversible error was not shown, *viz*:

"The State's argument ignores the purpose of the punishment issues. They cannot relieve a defendant of criminal liability; they serve only to guide the jury's deliberations on punishment. That the deceased acted lawfully or that his conduct was reasonably foreseeable does not deprive appellant of his right to have the jury consider mitigating circumstances. The evidence raised the provocation issue, and it should have been submitted to the jury."

**13.** A portion of a guilt-innocence charge that is given may be constitutionally impermissible, if "plainly inconsistent" with an established principle, e.g., *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) and *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); when collaterally attacked in a federal habeas corpus proceeding the test of an instruction given or omitted is whether it "so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 156–157, 97 S.Ct. 1730, 1738, 52 L.Ed.2d 203 (1977).

**14.** It is not enough, contrary to the argument by the State, that appellant's trial counsel told the jury that provocation was relevant to the second issue of future dangerousness for "arguments of counsel cannot substitute for instructions by the court," *Taylor v. Kentucky*, 436 U.S. 478, 488–489, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978).

ceptable statute is fundamental error as we know it in Texas, for the error goes to the very basis of the punishment so that the charge fails to permit the jury to consider the circumstances constitutionally required for its imposition,[15] see *Harris v. State,* supra, and, therefore, we should sustain the third ground of error.

Returning to the question framed by the majority, if the majority continues to insist that is the question in the case, the answer is: "It depends."

Assuming, as the majority apparently does, that the provisions of Articles 36.14–36.19, V.A.C.C.P., see notes 4–8, *ante,* are applicable to the mandates of Article 37.-071, supra,[16] Article 36.15 expressly provides that "both sides" may present "written instructions and ask that they be given to the jury." Thus the prosecuting attorney in the case may well believe that the statutory direction that his "primary duty . . . to see that justice is done," Articles 2.01 and 2.03(b), V.A.C.C.P., impels a request by him that the third issue be submitted. Moreover, it is clearly the duty of a judge presiding at a trial of a capital case to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case . . ." Article 36.14, and to consider any requests for special charges, Article 36.15,

incorporating those granted in the final charge, Article 36.16. Finally, should all such procedures be disregarded, it is for this Court to say whether one or more omissions injured the rights of an accused or deprived him of a fair and impartial trial, Article 36.19.

Thus, implicated more than a "right" an accused may be said to have waived, are respective duties of others, and in turn this Court, to safeguard the judicial process by which a citizen is condemned to death. See *Taylor v. Kentucky,* 436 U.S. 478, 489, n. 17,[17] 98 S.Ct. 1930, 1936, n. 17, 56 L.Ed.2d 468 (1978); *Jurek v. Texas,* supra, 428 U.S. at 276, 96 S.Ct. at 2958.[18] We honor the "basic concept underlying the Eighth Amendment"—"the dignity of man"—*Trop v. Dulles,* 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958), in the doing.

ROBERTS, J., joins.

---

**15.** Like the State in its brief, the majority seems to view the provocation question as a "defensive issue" which an accused is "entitled" to have submitted if raised by the evidence. Both the Court and the Supreme Court saw it otherwise: an integral part of a constitutional scheme for directing and guiding deliberations of a capital jury to avoid an arbitrary, wanton and freakish imposition of the death penalty. *Jurek v. State,* 522 S.W.2d 934, 939 (Tex.Cr. App.1975); *Jurek v. Texas,* supra.

**16.** Article 37.07, § 3(b), V.A.C.C.P., ties in "such additional written instructions as may be necessary" on punishment with rules "applicable on the issue of guilt or innocence." Article 37.071, supra, however, does not; rather it is, so to speak, a formbook presentation of that which must be submitted to the jury. There is no mention of objections to or requested instructions for inclusion in the charge, nor any reference back to other procedural rules, and the Court has all but held in *King v. State,* 553 S.W.2d 105, 107–108 (Tex.Cr.App.1977) and *Quinones v. State,* 592 S.W.2d 933, 947 (Tex.Cr.

App.1980) that additional charges are not required; see also *Vigneault v. State,* 600 S.W.2d 318, 329–330 (Tex.Cr.App.1980).

**17.** The opinion of the Supreme Court by Justice Powell refers to admonishments in the ABA Project on Standards for Criminal Justice, Function of the Trial Judge, *viz* :

"The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial. * * * "

**18.** "By providing prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided means to promote *the evenhanded, rational, and consistent* imposition of death sentences under law."