COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-343-CR
 
 
DOUGLAS WAYNE DUPREE                                                    APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 43RD 
DISTRICT COURT OF PARKER COUNTY
 
------------
 
OPINION
 
------------
        A 
jury convicted Appellant Douglas Wayne Dupree of murder and assessed his 
punishment at eight years’ confinement in the Institutional Division of the 
Texas Department of Criminal Justice after finding that Appellant acted in the 
heat of sudden passion arising from an adequate cause. The trial court sentenced 
him accordingly and entered an affirmative deadly weapon finding in the 
judgment. Appellant brings seven points, challenging the legal and factual 
sufficiency of the evidence, the trial court’s refusal to instruct the jury on 
the lesser included offense of failure to stop and render aid, the trial 
court’s exclusion of expert testimony, and the trial court’s overruling of 
two objections to the State’s jury argument. Because we hold that the trial 
court did not err and that the evidence is both legally and factually 
sufficient, we affirm the trial court’s judgment.
Summary of the 
Facts
        Appellant 
and the complainant were brothers. The record reflects the complainant’s 
sometimes abusive behavior toward Appellant. On August 18, 2001, Appellant and 
the complainant left the family home together in their brother’s van. During 
the van ride, Appellant and the complainant had an argument about cigarettes 
that escalated into a fight.
        According 
to eyewitness Jackie Corley, Appellant pulled over to the side of the highway, 
where the complainant exited the van and continued to argue with Appellant. The 
complainant then threw a large rock through the windshield of the driver’s 
side of the van and walked away. Appellant drove the van away, but returned 
several times. On its final return, the van came back to where the complainant 
was and knocked him down. The complainant got up and was trying to run away when 
the van ran over him again. The van then picked up speed, and its tires were 
spinning until it again hit the complainant. The van drove away on the service 
road and never appeared to be out of control. Although the eyewitness accounts 
had some inconsistencies, the eyewitnesses were unequivocally consistent in 
testifying that Appellant chased and ran over the complainant in the van, that 
Appellant never lost control of the van or tried to stop, and that he 
immediately fled the scene on the service road.
        The 
police arrested Appellant at his house shortly after the incident. While waiting 
in the booking area at the jail, Appellant discussed the incident with another 
arrestee. A jailer who overheard the conversation testified. The jailer 
testified that Appellant stated that he had fought with and hit a guy several 
times over a pack of cigarettes and that the guy always “mooched” off of him 
and never bought his own cigarettes. Appellant went on to say that he got in his 
vehicle to drive away, and the guy threw a rock at the vehicle. Then, Appellant 
continued, the guy stood in front of the van, and Appellant just ran over him. 
The guy was caught in the wheel well, which made it difficult for Appellant to 
steer. Appellant also stated that the police would never be able to prove that 
it was he who had run over the complainant. The jailer testified that Appellant 
was very cocky and was laughing as he told the story.
        The 
complainant survived thirteen days following the incident, finally dying from 
internal injuries caused by Appellant running over him in the van.
Legal and 
Factual Sufficiency
        In 
his first point, Appellant complains that the evidence is legally insufficient 
to support his conviction. In his second point, he complains that the evidence 
is factually insufficient to support his conviction.
        It 
is undisputed that Appellant was driving the van that ran over the complainant, 
causing injuries that resulted in his death. The record reflects that an 
argument broke out between Appellant and the complainant over cigarettes. 
Appellant pulled over to the shoulder of the highway, and the complainant got 
out of the van. Jackie Corley was driving his semi-truck with his wife Tina as a 
passenger when they saw Appellant and the complainant fighting in the van. They 
watched the van pull over and saw the complainant get out. Because the van had 
cut close in front of Corley’s truck, he pulled over and got out, intending to 
confront the van’s occupants for almost hitting his truck. Jackie and Tina 
Corley both testified that the complainant threw the rock while the van was 
parked on the shoulder of the highway. Another witness, Jacob Dunn, testified 
that the van was in a parking lot when it was struck by the rock that the 
complainant threw. It is undisputed that a large rock broke the van’s 
windshield on the driver’s side. It is also undisputed that the complainant 
walked away after he threw the rock through the windshield. The Corleys 
testified that the van left and came back a few times. The Corleys, Dunn, and 
two additional witnesses, David Thompson and Frank Polan, all testified that the 
van chased down the complainant and ran him down. The van sped away after 
striking the complainant. Witnesses testified that the van did not seem to be 
out of control, nor did it strike anything other than the complainant.
        Jailer 
Alex Falter testified that he overheard Appellant tell someone in the booking 
area that he had fought with and hit someone several times over a pack of 
cigarettes. Appellant said that he got into his van to drive away but that the 
other man had thrown a rock at the vehicle and stood in front of the van, and he 
just ran over him.
        Fort 
Worth police officer John Farris went to Appellant’s address as a crime scene 
officer. He examined the van and Appellant’s bloody clothing, as well as the 
rock that had been thrown through the windshield. Farris testified that 
Appellant admitted to driving the van and that the entire family, including 
Appellant, was very upset by what had happened. Medical Examiner Doctor Gary 
Sisler stated that the complainant died as a result of his injuries sustained by 
colliding with and being run over by the van.
        Appellant 
argues that the evidence is factually insufficient to sustain his murder 
conviction because he, his mother, and his brother Donny all testified that he 
was dazed, confused, and upset when he returned home. They testified that he was 
unsteady on his feet and injured. He argues that the evidence shows, at best, 
that he acted recklessly in driving into and over the complainant after having 
been attacked and momentarily losing consciousness.
        The 
State points out that witnesses testified that the van never slowed down and 
never tried to stop. It was never out of control. Although there were trees in 
the area where the complainant was run over, the van did not hit anything but 
the complainant. Rubber residue on the curb and where the tracks began in the 
grass indicated that the van peeled out. The State points out that Jackie Corley 
testified that the van picked up speed and that its tires were spinning when it 
entered the grass until it hit the complainant the second time. It is 
uncontested that Appellant immediately fled the scene. Appellant was described 
as cocky and laughing when he talked in the jail booking area about fighting 
with the complainant and running over him. He said that the complainant had been 
caught in the wheel well, causing Appellant to make a trench in the grass and 
making it hard for him to steer. He also bragged that the police would never 
prove that he was the one who had run over the complainant.
        Appellant’s 
reconstruction expert conceded that acceleration marks at the scene were 
consistent with hitting the grass to chase and run over someone. Other than 
Appellant’s testimony, there was no evidence that he suffered a blackout at 
the time he ran over the complainant. Contrary to Appellant’s assertion, 
witnesses testified that as Appellant chased the complainant, he maintained 
control of the van, and it never seemed to be in any way out of control. Officer 
D.T. Crow testified that Appellant had some scratches on his forehead, neck, and 
arm, and maybe even a bump on his head. Officer John Farris described 
Appellant’s injuries as a large bump on his forehead and some scratching 
around the neck and face, with bruises on the face and a large knot over his 
left eyebrow. The jury also viewed photographs of Appellant’s injuries. The 
jury was presented with the evidence and had the opportunity to weigh the 
credibility of the witnesses and to determine the weight to be given to the 
testimony of each witness.
        Applying 
the appropriate standards of review,[1] we find the 
evidence both legally and factually sufficient to support the jury’s verdict. 
We therefore overrule Appellant’s first and second points.
Jury 
Instruction
        In 
his third and fourth points, Appellant argues that the trial court erred in 
overruling his objection to the court’s charge at the guilt phase of the trial 
for failure to submit in any form an instruction on the lesser included offense 
of failure to stop and render aid. In addition, he argues that the trial court 
also erred in overruling his requested instruction on the lesser included 
offense of failure to stop and render aid.
        Appellant 
properly argues that the accused is entitled to a jury instruction on every 
defensive issue raised by the evidence.[2]  A 
person is entitled to an instruction on a lesser included offense only when the 
evidence shows that, if guilty, he is guilty only of the lesser offense.
        As 
the State points out, the first step is to decide whether the requested 
instruction involves an offense that is actually a lesser included offense of 
the offense charged.[3]  An offense is a lesser 
included offense if it is established by proof of the same or less than all the 
facts required to establish the commission of the offense charged and differs 
from the offense charged only in the respect that a less serious injury or risk 
of injury to the same person, property, or public interest is sufficient to 
establish its commission or that a less culpable mental state establishes its 
commission, or if it consists of an attempt to commit the offense charged or an 
included offense.[4]
        Only 
if the requested offense actually is a lesser included offense do we take the 
second step of determining whether some evidence would permit a rational jury to 
find that the defendant is guilty only of the lesser offense.[5]  
As the Texas Court of Criminal Appeals has stated, “[T]here must be some 
evidence from which a rational jury could acquit the defendant of the greater 
offense while convicting him of the lesser-included offense.”[6]
        The 
State argues that failure to stop and render aid is not a lesser included 
offense of murder or manslaughter. We agree. A person commits the offense of 
failure to stop and render aid if he is involved in an accident resulting in 
injury to or death of a person and fails immediately to stop the vehicle at the 
scene of the accident or as close to the scene as possible, fails immediately to 
return to the scene of the accident, or fails to remain at the scene until he 
complies with the requirements of section 550.023 of the Texas Transportation 
Code, mandating that he give his name and address, show his driver’s license, 
and provide any injured person reasonable assistance.[7]  
A person commits the offense of murder if he intentionally or knowingly causes 
the death of another person or if he intends to cause serious bodily injury and 
commits an act clearly dangerous to human life that causes the death of another 
person.[8]  A person commits the offense of 
manslaughter if he recklessly causes another person’s death.[9]  
Examining the elements of the offense of failure to stop and render aid and 
comparing them with the elements of the offenses of murder and manslaughter, we 
note that the elements of failure to stop and render aid are not required for 
murder or manslaughter. Consequently, the offense of failure to stop and render 
aid is not a lesser included offense of murder or manslaughter. The trial court 
therefore did not err in refusing to instruct the jury as requested by 
Appellant. We overrule Appellant’s third and fourth points.
Expert 
Testimony
        In 
his fifth point, Appellant argues that the trial court abused its discretion in 
excluding expert testimony about a “psychological autopsy” of the 
complainant. Appellant attempted to offer expert testimony of Stephen Karten, a 
clinical psychologist, regarding a “psychological autopsy” of the 
complainant. Karten testified outside the presence of the jury that he believed 
his testimony was relevant to get an idea of the psychological functioning of 
the complainant while he was alive. He testified that he believed the 
complainant had a bipolar disorder and an intermittent explosive disorder, which 
would manifest themselves in extreme mood swings and explosive anger.
        As 
the State points out, the trial court noted that the admissibility of expert 
testimony under article 38.36(b) of the Texas Code of Criminal Procedure 
depended upon whether Appellant raised a justification defense under section 
9.31, 9.32, or 9.33 of the Texas Penal Code.[10]  
The trial court delayed its ruling on the admissibility of Karten’s testimony 
until after Appellant had testified. Because Appellant did not raise the defense 
of justification, the trial court refused to allow Karten to testify.
        Appellant 
appears to argue that Dr. Karten’s testimony was admissible to show that 
Appellant was aware of the complainant’s propensity to violence. Although the 
State argues alternatively that the scientific theory was novel as applied to 
the case now before this court, that is not the major thrust of the State’s 
argument. The State argues that the testimony was not admissible because 
Appellant did not raise a justification defense. Instead, he testified that 
after the rock hit him in the head, he blacked out and during this blackout 
somehow ran over the complainant. Because Appellant did not raise a 
justification defense, the trial court did not abuse its discretion in refusing 
to allow Dr. Karten to testify at the guilt phase of the trial. We note that Dr. 
Karten’s testimony may have been relevant to the sudden passion argument at 
punishment, but Appellant did not offer the testimony for that purpose. We 
overrule Appellant’s fifth point.
Jury Argument
        In 
his sixth and seventh points, Appellant complains that the trial court erred in 
overruling his objection to the State’s closing arguments. In his sixth point, 
Appellant argues that the State commented on his failure to testify and his 
invocation of his right to remain silent after his arrest. In his seventh point, 
he argues that the prosecutor injected his personal opinion into the jury 
argument.
        To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
plea for law enforcement.[11]
        During 
the State’s closing argument at the conclusion of the guilt phase of the 
trial, the prosecutor argued,
  
I mean, he showed less concern for his own brother after he ran him over than 
normal people would express after having just run over a squirrel. You know, 
that’s about the same amount of care that he considered for his brother 
Tommie. And why? Because he was mad. Because he meant to do it. If he didn’t 
mean to do it, he would have shown some kind of remorse, some kind of sorry.
  
 
The trial court overruled 
Appellant’s objection. The prosecutor continued, “Not once did you hear from 
a family member that he came home crying and upset because he killed his brother 
or that he accidentally ran over him or anything to that effect.”
        The 
State argues that Appellant’s argument on appeal does not comport with his 
objection at trial. At trial, Appellant objected that the State was commenting 
“on the failure of the Defendant to make a pre-arrest statement.” Appellant 
argues on appeal that the prosecutor’s statement “was a comment on [his] 
failure to testify and remain silent after arrest.” We agree with the State 
that Appellant’s point on appeal does not comport with his complaint at trial. 
The complaint made on appeal must comport with the complaint made in the trial 
court, or the error is forfeited.[12]  We 
overrule Appellant’s sixth point.
        In 
his seventh point, Appellant argues that the prosecutor improperly injected his 
personal opinion into the argument. The State argued, “Douglas Dupree had 
enough of his brother that day and he decided he was going to kill him. And he 
did. And it’s murder.“ A reasonable deduction from the evidence may be 
properly expressed during jury argument.[13]  
Viewing the record of the evidence before the jury, we hold that the State’s 
argument was a reasonable deduction from the evidence and not improper. The 
trial court therefore did not abuse its discretion in overruling Appellant’s 
objection to the argument. We overrule Appellant’s seventh point.
Conclusion
        Having 
overruled Appellant’s seven points, we affirm the trial court’s judgment.
    
   
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
     
 
PANEL A:   CAYCE, 
C.J.; DAUPHINOT and GARDNER, JJ.
 
CAYCE, C.J. concurs without 
opinion.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 23, 2004


NOTES
1.  See 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden 
v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry v. State, 
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000) (all providing legal sufficieny standard of review); Zuniga v. State, 
144 S.W.3d 477, 481-82, 484-87 (Tex. Crim. App. 2004); Sims v. State, 99 
S.W.3d 600, 603 (Tex. Crim. App. 2003); Cain v. State, 958 S.W.2d 404, 
407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of 
review).
2.  See 
Johnson v. State, 629 S.W.2d 731, 733 (Tex. Crim. App. 1981).
3.  Feldman 
v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002).
4.  Tex. Code Crim. Proc. Ann. art. 37.09 
(Vernon 1981).
5.  Feldman, 
71 S.W.3d at 750.
6.  Id. 
at 750-51.
7.  Tex. Transp. Code Ann. §§ 550.021, 
550.023 (Vernon 1999).
8.  Tex. Penal Code Ann. § 19.02 (Vernon 
2003).
9.  Id. 
§ 19.04.
10.  Tex. Code Crim. Proc. Ann. art. 38.36(b) 
(Vernon Supp. 2004-05); Tex. Penal Code 
Ann. §§ 9.31-.33 (Vernon 2003).
11.  Felder 
v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied, 
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. 
App. 1973).
12.  Heidelberg 
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Bell v. State, 
938 S.W.2d 35, 54-55 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 827 
(1997).
13.  Felder, 
848 S.W.2d at 94-95; Alejandro, 493 S.W.2d at 231.