Douglas Wayne Dupree v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-343-CR

DOUGLAS WAYNE DUPREE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 43
RD
 DISTRICT COURT OF PARKER COUNTY

------------

OPINION

------------

A jury convicted Appellant Douglas Wayne Dupree of murder and assessed his punishment at eight years’ confinement in the Institutional Division of the Texas Department of Criminal Justice after finding that Appellant acted in the heat of sudden passion arising from an adequate cause.  The trial court sentenced him accordingly and entered an affirmative deadly weapon finding in the judgment.  Appellant brings seven points, challenging the legal and factual sufficiency of the evidence, the trial court’s refusal to instruct the jury on the lesser included offense of failure to stop and render aid, the trial court’s exclusion of expert testimony, and the trial court’s overruling of two objections to the State’s jury argument.  Because we hold that the trial court did not err and that the evidence is both legally and factually sufficient, we affirm the trial court’s judgment.

Summary of the Facts

Appellant and the complainant were brothers.  The record reflects the  complainant’s sometimes abusive behavior toward Appellant.  On August 18, 2001, Appellant and the complainant left the family home together in their brother’s van.  During the van ride, Appellant and the complainant had an argument about cigarettes that escalated into a fight.

According to eyewitness Jackie Corley, Appellant pulled over to the side of the highway, where the complainant exited the van and continued to argue with Appellant.  The complainant then threw a large rock through the windshield of the driver’s side of the van and walked away.  Appellant drove the van away, but returned several times.  On its final return, the van came back to where the complainant was and knocked him down.  The complainant got up and was trying to run away when the van ran over him again.  The van then picked up speed, and its tires were spinning until it again hit the complainant.  The van drove away on the service road and never appeared to be out of control.  Although the eyewitness accounts had some inconsistencies, the eyewitnesses were unequivocally consistent in testifying that Appellant chased and ran over the complainant in the van, that Appellant never lost control of the van or tried to stop, and that he immediately fled the scene on the service road.

The police arrested Appellant at his house shortly after the incident.  While waiting in the booking area at the jail, Appellant discussed the incident with another arrestee.  A jailer who overheard the conversation testified.  The jailer testified that Appellant stated that he had fought with and hit a guy several times over a pack of cigarettes and that the guy always “mooched” off of him and never bought his own cigarettes.  Appellant went on to say that he got in his vehicle to drive away, and the guy threw a rock at the vehicle.  Then, Appellant continued, the guy stood in front of the van, and Appellant just ran over him.  The guy was caught in the wheel well, which made it difficult for Appellant to steer.  Appellant also stated that the police would never be able to prove that it was he who had run over the complainant.  The jailer testified that Appellant was very cocky and was laughing as he told the story.

The complainant survived thirteen days following the incident, finally dying from internal injuries caused by Appellant running over him in the van.

Legal and Factual Sufficiency

In his first point, Appellant complains that the evidence is legally insufficient to support his conviction.  In his second point, he complains that the evidence is factually insufficient to support his conviction.

It is undisputed that Appellant was driving the van that ran over the complainant, causing injuries that resulted in his death.  The record reflects that an argument broke out between Appellant and the complainant over cigarettes.  Appellant pulled over to the shoulder of the highway, and the complainant got out of the van.  Jackie Corley was driving his semi-truck with his wife Tina as  a passenger when they saw Appellant and the complainant fighting in the van.  They watched the van pull over and saw the complainant get out.  Because the van had cut close in front of Corley’s truck, he pulled over and got out, intending to confront the van’s occupants for almost hitting his truck.  Jackie and Tina Corley both testified that the complainant threw the rock while the van was parked on the shoulder of the highway.  Another witness, Jacob Dunn, testified that the van was in a parking lot when it was struck by the rock that the complainant threw.  It is undisputed that a large rock broke the van’s windshield on the driver’s side.  It is also undisputed that the complainant walked away after he threw the rock through the windshield.  The Corleys testified that the van left and came back a few times.  The Corleys, Dunn, and two additional witnesses, David Thompson and Frank Polan, all testified that the van chased down the complainant and ran him down.  The van sped away after striking the complainant.  Witnesses testified that the van did not seem to be out of control, nor did it strike anything other than the complainant.

Jailer Alex Falter testified that he overheard Appellant tell someone in the booking area that he had fought with and hit someone several times over a pack of cigarettes.  Appellant said that he got into his van to drive away but that the other man had thrown a rock at the vehicle and stood in front of the van, and he just ran over him.

Fort Worth police officer John Farris went to Appellant’s address as a crime scene officer.  He examined the van and Appellant’s bloody clothing, as well as the rock that had been thrown through the windshield.  Farris testified that Appellant admitted to driving the van and that the entire family, including Appellant, was very upset by what had happened.  Medical Examiner Doctor Gary Sisler stated that the complainant died as a result of his injuries sustained by colliding with and being run over by the van.

Appellant argues that the evidence is factually insufficient to sustain his murder conviction because he, his mother, and his brother Donny all testified that he was dazed, confused, and upset when he returned home.  They testified that he was unsteady on his feet and injured.  He argues that the evidence shows, at best, that he acted recklessly in driving into and over the complainant after having been attacked and momentarily losing consciousness.

The State points out that witnesses testified that the van never slowed down and never tried to stop.  It was never out of control.  Although there were trees in the area where the complainant was run over, the van did not hit anything but the complainant.  Rubber residue on the curb and where the tracks began in the grass indicated that the van peeled out.  The State points out that Jackie Corley testified that the van picked up speed and that its tires were spinning when it entered the grass until it hit the complainant the second time.  It is uncontested that Appellant immediately fled the scene.  Appellant was described as cocky and laughing when he talked in the jail booking area about fighting with the complainant and running over him.  He said that the complainant had been caught in the wheel well, causing Appellant to make a trench in the grass and making it hard for him to steer.  He also bragged that the police would never prove that he was the one who had run over the complainant.

Appellant’s reconstruction expert conceded that acceleration marks at the scene were consistent with hitting the grass to chase and run over someone.  Other than Appellant’s testimony, there was no evidence that he suffered a blackout at the time he ran over the complainant.  Contrary to Appellant’s assertion, witnesses testified that as Appellant chased the complainant, he maintained control of the van, and it never seemed to be in any way out of control.  Officer D.T. Crow testified that Appellant had some scratches on his forehead, neck, and arm, and maybe even a bump on his head.  Officer John Farris described Appellant’s injuries as a large bump on his forehead and some scratching around the neck and face, with bruises on the face and a large knot over his left eyebrow.  The jury also viewed photographs of Appellant’s injuries.  The jury was presented with the evidence and had the opportunity to weigh the credibility of the witnesses and to determine the weight to be given to the testimony of each witness.

Applying the appropriate standards of review,
(footnote: 1) we find the evidence both legally and factually sufficient to support the jury’s verdict.  We therefore overrule Appellant’s first and second points.

Jury Instruction

In his third and fourth points, Appellant argues that the trial court erred in overruling his objection to the court’s charge at the guilt phase of the trial for failure to submit in any form an instruction on the lesser included offense of failure to stop and render aid.  In addition, he argues that the trial court also erred in overruling his requested instruction on the lesser included offense of failure to stop and render aid.

Appellant properly argues that the accused is entitled to a jury instruction on every defensive issue raised by the evidence.
(footnote: 2)  A person is entitled to an instruction on a lesser included offense only when the evidence shows that, if guilty, he is guilty only of the lesser offense.

As the State points out, the first step is to decide whether the requested instruction involves an offense that is actually a lesser included offense of the offense charged.
(footnote: 3)  An offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged and differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest is sufficient to establish its commission or that a less culpable mental state establishes its commission, or if it consists of an attempt to commit the offense charged or an included offense.
(footnote: 4)
 Only if the requested offense actually is a lesser included offense do we take the second step of determining whether some evidence would permit a rational jury to find that the defendant is guilty only of the lesser offense.
(footnote: 5)  As the Texas Court of Criminal Appeals has stated, “[T]here must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense.”
(footnote: 6)
 The State argues that failure to stop and render aid is not a lesser included offense of murder or manslaughter.  We agree.  A person commits the offense of failure to stop and render aid if he is involved in an accident resulting in injury to or death of a person and fails immediately to stop the vehicle at the scene of the accident or as close to the scene as possible, fails immediately to return to the scene of the accident, or fails to remain at the scene until he complies with the requirements of section 550.023 of the Texas Transportation Code, mandating that he give his name and address, show his driver’s license, and provide any injured person reasonable assistance.
(footnote: 7)  A person commits the offense of murder if he intentionally or knowingly causes the death of another person or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another person.
(footnote: 8)  A person commits the offense of manslaughter if he recklessly causes another person’s death.
(footnote: 9)  Examining the elements of the offense of failure to stop and render aid and comparing them with the elements of the offenses of murder and manslaughter, we note that the elements of failure to stop and render aid are  not required for murder or manslaughter.  Consequently, the offense of failure to stop and render aid is not a lesser included offense of murder or manslaughter.  The trial court therefore did not err in refusing to instruct the jury as requested by Appellant.  We overrule Appellant’s third and fourth points.

Expert Testimony

In his fifth point, Appellant argues that the trial court abused its discretion in excluding expert testimony about a “psychological autopsy” of the complainant.  Appellant attempted to offer expert testimony of Stephen Karten, a clinical psychologist, regarding a “psychological autopsy” of the complainant.  Karten testified outside the presence of the jury that he believed his testimony was relevant to get an idea of the psychological functioning of the complainant while he was alive.  He testified that he believed the complainant had a bipolar disorder and an intermittent explosive disorder, which would manifest themselves in extreme mood swings and explosive anger.

As the State points out, the trial court noted that the admissibility of expert testimony under article 38.36(b) of the Texas Code of Criminal Procedure depended upon whether Appellant raised a justification defense under section 9.31, 9.32, or 9.33 of the Texas Penal Code.
(footnote: 10)  The trial court delayed its ruling on the admissibility of Karten’s testimony until after Appellant had testified.  Because Appellant did not raise the defense of justification, the trial court refused to allow Karten to testify.

Appellant appears to argue that Dr. Karten’s testimony was admissible to show that Appellant was aware of the complainant’s propensity to violence.  Although the State argues alternatively that the scientific theory was novel as applied to the case now before this court, that is not the major thrust of the State’s argument.  The State argues that the testimony was not admissible because Appellant did not raise a justification defense.  Instead, he testified that after the rock hit him in the head, he blacked out and during this blackout somehow ran over the complainant.  Because Appellant did not raise a justification defense, the trial court did not abuse its discretion in refusing to allow Dr. Karten to testify at the guilt phase of the trial.  We note that Dr. Karten’s testimony may have been relevant to the sudden passion argument at punishment, but Appellant did not offer the testimony for that purpose.  We overrule Appellant’s fifth point.

Jury Argument

In his sixth and seventh points, Appellant complains that the trial court erred in overruling his objection to the State’s closing arguments.  In his sixth point, Appellant argues that the State commented on his failure to testify and his invocation of his right to remain silent after his arrest.  In his seventh point, he argues that the prosecutor injected his personal opinion into the jury argument.

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.
(footnote: 11)
 During the State’s closing argument at the conclusion of the guilt phase of the trial, the prosecutor argued,

I mean, he showed less concern for his own brother after he ran him over than normal people would express after having just run over a squirrel.  You know, that’s about the same amount of care that he considered for his brother Tommie.  And why?  Because he was mad.  Because he meant to do it.  If he didn’t mean to do it, he would have shown some kind of remorse, some kind of sorry.

The trial court overruled Appellant’s objection.  The prosecutor continued, “Not once did you hear from a family member that he came home crying and upset because he killed his brother or that he accidentally ran over him or anything to that effect.”

The State argues that Appellant’s argument on appeal does not comport with his objection at trial.  At trial, Appellant objected that the State was commenting “on the failure of the Defendant to make a pre-arrest statement.”  Appellant argues on appeal that the prosecutor’s statement “was a comment on [his] failure to testify and remain silent after arrest.”  We agree with the State that Appellant’s point on appeal does not comport with his complaint at trial.  The complaint made on appeal must comport with the complaint made in the trial court, or the error is forfeited.
(footnote: 12)  We overrule Appellant’s sixth point.   In his seventh point, Appellant argues that the prosecutor improperly injected his personal opinion into the argument.  The State argued, “Douglas Dupree had enough of his brother that day and he decided he was going to kill him.  And he did.  And it’s murder.“  A reasonable deduction from the evidence may be properly expressed during jury argument.
(footnote: 13)  Viewing the record of the evidence before the jury, we hold that the State’s argument was a reasonable deduction from the evidence and not improper.  The trial court therefore did not abuse its discretion in overruling Appellant’s objection to the argument.  We overrule Appellant’s seventh point.

Conclusion

Having overruled Appellant’s seven points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

CAYCE, C.J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 23, 2004

FOOTNOTES
1:
See Jackson v. Virginia
,
 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (all providing legal sufficieny standard of review);
  Zuniga v. State
, 144 S.W.3d 477, 481-82, 484-87 (Tex. Crim. App. 2004); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review).

2:
See Johnson v. State
, 629 S.W.2d 731, 733 (Tex. Crim. App. 1981).

3:
Feldman v. State
, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002).

4:
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981).

5:
Feldman
, 71 S.W.3d at 750.

6:
Id
. at 750-51.

7:
Tex. Transp. Code Ann.
 §§ 550.021, 550.023 (Vernon 1999).

8:
Tex. Penal Code Ann.
 § 19.02 (Vernon 2003).

9:
Id
. § 19.04.

10:
Tex. Code Crim. Proc. Ann.
 art. 38.36(b) (Vernon Supp. 2004-05); 
Tex. Penal Code Ann.
 §§ 9.31-.33 (Vernon 2003).

11:
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

12:
Heidelberg v. State
, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004);  
Bell v. State
, 938 S.W.2d 35, 54-55 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997).

13:
Felder
, 848 S.W.2d at 94-95; 
Alejandro
, 493 S.W.2d at 231.